# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:11cr00016-002 |
| ) | **REPORT AND** |
| JAMEL DICKERSON and ) | **RECOMMENDATION** |
| KENDRA MONIQUE LEWIS, ) | |
|    Defendants ) | |
| ) | |

This matter is before the court on the defendant Kendra Monique Lewis's motion to suppress, (Docket Item No. 37), ("Motion"). The Motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). An evidentiary hearing was held before the undersigned on April 11, 2012. For the reasons set forth below, I recommend that the court deny the Motion.

## *I. Facts*

The defendants, Jamel Dickerson and Lewis, are charged in an Indictment with multiple counts, including conspiracy to commit bank fraud, bank fraud, credit card fraud, use of stolen credit cards and identity theft. The Motion seeks to suppress Lewis's statements made and evidence recovered from her residence on December 13, 2010. Only one witness, Bristol, Virginia, Police Detective Angela Simpson, testified at the evidentiary hearing. Therefore, the relevant facts are not in dispute.

-1-

Simpson testified that she and Bristol Police Lt. Sean Carrigan traveled to Lewis's Bristol residence on December 13, 2010, to speak with her regarding Simpson's investigation of Dickerson for use of stolen credit cards. Simpson stated that when she went to Lewis's residence she knew that there was an outstanding warrant for Dickerson's arrest. She did not know of any pending charges or warrants outstanding against Lewis. Simpson said that she did know that Dickerson had been the subject of a police department domestic call recently involving Lewis. Simpson also testified that, as part of her investigation, she had reviewed videotape recordings showing a woman with Dickerson during his use of stolen credit cards. Simpson stated that she suspected that Lewis was the woman on the videotape recording, but, because she had never seen Lewis before, she did not know who the woman was.

Simpson testified that both she and Carrigan were in plain clothes and traveled to Lewis's residence in an unmarked police car. Simpson stated that she had not spoken to Lewis prior to arriving at her residence. She stated that both she and Carrigan were armed but, according to department policy, their weapons were covered by their clothing. Simpson recalled that the weather was cold and that it had been snowing. Simpson said that she and Carrigan went to the door of Lewis's residence and knocked on the door. When Lewis came to the door, Simpson said that she and Carrigan identified themselves as Bristol Police officers. She said that she then asked Lewis if they could come in and talk with her regarding an investigation they were conducting.

Simpson recalled that there were young children in the home when she spoke with Lewis, but did not recall the number or their ages. She said that she sat

in the living room on a sofa with Lewis and that she did not recall where Carrigan was located during her questioning of Lewis. Lewis told her that she and Dickerson had recently gotten into an argument and that Dickerson had left the residence 10 days earlier and had not returned since then. Simpson stated that she asked Lewis about Dickerson's use of stolen credit cards, and Lewis told her that Dickerson would routinely break into automobiles, steal credit cards and use them.

Simpson stated that she specifically asked Lewis if she had used the stolen credit cards, and Lewis admitted that she had done so at Dickerson's request. When Simpson asked Lewis if she had any stolen credit cards in her possession, Lewis said she did not. Simpson asked Lewis if Lewis would mind her looking in her purse, and she said that Lewis agreed. When Simpson looked into Lewis's purse, she saw a wallet and asked Lewis whose wallet it was. Lewis told Simpson that the wallet belonged to Dickerson, and Simpson asked if she could look in the wallet. Simpson testified that Lewis told her that she could. When Simpson looked in the wallet, she found credit cards with names other than Dickerson's name. She said that she asked Lewis if she could take the wallet, and Lewis told her that she could. Simpson also testified that she believed that Lewis had authority to allow the officers to look at the wallet since Dickerson had left it with Lewis.

Simpson said she asked Lewis to provide a written statement, and Lewis agreed. Simpson testified that Government's Exhibit No. 1 was the statement provided to her by Lewis on December 13, 2010. Simpson stated that Lewis wrote the statement herself on a form entitled "Voluntary Statement." Lewis also signed the statement on the line for "Signature of Person Giving Voluntary Statement." The form states that the statement was completed at 3:12 p.m.

Simpson said that she also asked Lewis if they could look in her car for other items stolen in recent automobile break-ins. Simpson said that Lewis agreed and told her that a laptop computer located in the car was put there by Dickerson and that she assumed he had stolen it. Simpson said that Lewis went outside with them while they looked through the car.  Simpson said that she asked Lewis if she could take the laptop, and Lewis told her that she could.

Simpson stated that she and Carrigan were at Lewis's residence for approximately 45 minutes at most.  Simpson conceded that she never advised Lewis of her *Miranda* warnings. Simpson said that Lewis never asked them to leave and never stated that she did not want to speak with them. Simpson admitted that she never told Lewis that Lewis had the right to refuse to speak with them or to ask them to leave her home.  Simpson said that if Lewis had told her that she did not want to speak with her, she would have left.

Simpson testified that she had no reason to believe that Lewis suffered from any cognitive problems and that there was no evidence that Lewis was impaired or had used any medicines or drugs or consumed any alcohol prior to speaking with her.  She stated that Lewis appeared to understand her questions and answered them appropriately.

Simpson stated that neither she nor Carrigan threatened Lewis. Simpson said that she did not know if Lewis ever saw their weapons, but they did not show Lewis their weapons. Simpson said that Lewis was not arrested or placed in custody.  Simpson said she did tell Lewis that she might be charged for her

-4-

conduct.  In fact, no state charges were ever placed against Lewis, and she was not arrested until after she was indicted in this court on May 3, 2011.

## II. Analysis

Lewis argues that her December 13, 2010, statements should be suppressed because she was not advised of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). The Fifth Amendment guarantees that no one shall be compelled "to be a witness against himself" without the protections of due process.  U.S. CONST. amend. V.  The United States Supreme Court has held that the Constitution requires that certain warnings be given to a person before he may be interrogated while in custody. *See Dickerson v. United States*, 530 U.S. 428, 444 (2000).  These so-called "*Miranda* warnings" or "*Miranda* rights" include:

> [T]hat he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda*, 384 U.S. at 444. The Court has further held that, if such warnings are not provided, a defendant's statements resulting from a custodial interrogation may not be used in the prosecution's case in chief.  *See Dickerson*, 530 U.S. at 443-44.

In this case, the Government concedes that Lewis was not advised of her *Miranda* rights. Further, there appears to be no dispute that the interview conducted by officers on December 13, 2010, qualifies as an "interrogation." *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) ("...safeguards come into play whenever a person in custody is subjected to either express questioning or its

-5-

functional equivalent.") The Government argues that these facts are of no consequence, however, because Lewis was not in custody during the interview. Based on the specific facts and circumstances of this case, I agree.

For purposes of *Miranda*, custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984). A person is "in custody" if he "has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the degree associated with a formal arrest.'" *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)).

Viewing the facts and circumstances of this case objectively, I find that a reasonable person would not have believed that she was in custody and unable to terminate the interview at any point. Here, the interview of Lewis took place in her residence. Lewis voluntarily admitted the officers into her home and spoke to them. Lewis was free to end the interview and ask the officers to leave at any time. Lewis was not arrested or charged on that date. There are no allegations that she was threatened or coerced in any way. Based on this, I find that Lewis was not in custody and that her freedom of action was not curtailed to the degree associated with a formal arrest.

Lewis also argues that the warrantless search of her purse and seizure of Dickerson's wallet violated the Fourth Amendment's prohibition on unreasonable

searches and seizures. As a result, Lewis argues that any evidence seized in the search or any fruits of this evidence should be suppressed.

The Fourth Amendment to the United States Constitution protects individuals against "unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *United States v. Bush*, 404 F.3d 263, 275 (4th Cir. 2005) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). One such exception "to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Consent, however, must be given voluntarily, i.e. a person's will must not be overborne. *See Schneckloth*, 412 U.S. at 225-26. Taken in the totality of the surrounding circumstances, the factors determinative of whether a person's will has been overborne are as follows: the youth of the accused, lack of education, low intelligence, absence of advice regarding constitutional rights, length of detention, repeated and prolonged nature of questioning and the use of physical punishment. *See Schneckloth*, 412 U.S. at 226; *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). The government bears the burden of proving that consent was validly obtained. *See Schneckloth*, 412 U.S. at 222.

In this case, there is no evidence that Lewis suffered from any mental or cognitive deficiency so that her understanding of the situation was impaired. The officers had no evidence before them to suggest that Lewis was under the influence of alcohol or drugs. While Lewis was not advised of her *Miranda* rights, the officers had no obligation to do so because they had not placed her in custody.

Accordingly, I find that pursuant to the factors delineated in *Schneckloth*, Lewis's consent was voluntary.

Also, based upon Lewis's possession of Dickerson's wallet, the officers reasonably believed that Lewis had authority to consent to the search of the wallet. *See Illinois v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974). Furthermore, insofar as Lewis admits that the wallet belonged to Dickerson, Lewis has no standing to argue that her co-defendant's Fourth Amendment rights may have been violated. "Fourth Amendment rights are … personal rights … [which co-defendants] lack standing to assert vicariously." *United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988).

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Lewis was not in custody on December 13, 2010, when she made statements to law enforcement officers;

2. Because Lewis was not in custody, officers did not violate her rights under the Fifth Amendment when they questioned her without advising her of her *Miranda* rights;

3. Lewis gave officers consent to search her purse, Dickerson's wallet and her automobile on December 13, 2010; and

  4. Because Lewis gave officers consent to search her purse, Dickerson's wallet and her automobile, the searches were not unreasonable and did not violate her rights under the Fourth Amendment.

## RECOMMENDED DISPOSITION

For the reasoning set out above, the undersigned recommends that this court deny the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations could waive appellate review.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

ENTER: April 13, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE